# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MICHAEL MACDONALD, | Civil Action No. 18-12175-FDS |
| Plaintiff, | |
| v. | |
| CAPE COD CENTRAL RAILROAD, INC., CAPE RAIL, INC., and P. CHRIS PODGURSKI, | |
| Defendants. | |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTION TO STRIKE

**SAYLOR, J.**

This action involves a claim of disability discrimination. Plaintiff Michael MacDonald suffers from spina bifida and has been confined to a wheelchair for more than 31 years. On August 8, 2018, he attempted to board the Cape Cod Coastal Excursion Train in Hyannis, Massachusetts. He was told that he could not board the train because the rail cars were not accessible to disabled persons. According to the complaint, the train is owned and operated by defendants Cape Cod Central Railroad, Inc. and Cape Rail, Inc. Defendant P. Chris Podgurski is the president and a director of both corporations.

MacDonald has filed suit, alleging that defendants violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* Defendants have moved to dismiss the complaint on grounds of (1) lack of standing, (2) failure to join necessary parties, and (3) failure to state a claim upon which relief can be granted. Defendants have also moved for judgment on the pleadings under Fed. R. Civ. P. 12(c). Plaintiff has moved to strike various exhibits attached to

defendants' motion. For the following reasons, plaintiff's motion to strike will be granted in part and denied in part, and defendants' motions to dismiss and for judgment on the pleadings will be denied.

I.  **Background**

    A.  **Factual Background**

    The facts are set forth as described in the complaint.

    Michael MacDonald is a resident of Cotuit, Massachusetts. (Compl. ¶ 2). He has spina bifida, and has been using a wheelchair for mobility for more than 31 years. (*Id.*).

    Cape Cod Central Railroad, Inc. and Cape Rail, Inc. own and operate the Cape Cod Coastal Excursion Train. The train is based at the Hyannis depot in Hyannis, Massachusetts. (*Id.* ¶ 5). The train provides tours of lower Cape Cod to members of the public. (*Id.* ¶ 11). P. Chris Podgurski, a resident of Canton, Massachusetts, is the president and a director of both Cape Cod Central Railroad, Inc. and Cape Rail, Inc. (*Id.* ¶ 5).

    On August 8, 2018, MacDonald attempted to ride the Coastal Excursion Train. (*Id.* ¶ 3). However, he was unable to board the train because of alleged "barriers to access." (*Id.*). Specifically, he identifies ten violations of the ADA, including inaccessible means of egress, inaccessible restrooms and water closets, and lack of ramps. (*Id.* ¶ 16).[1] He alleges that he "intends to visit [defendants' trains] again in the near future," but expects that such efforts will be frustrated unless and until defendants remove the barriers. (*Id.* ¶ 14).

    B.  **Procedural Background**

    The complaint in this action was filed on October 18, 2018. It asserts a single claim

---

[1] Defendants contend that the rail cars, which were initially purchased under a contract in October 1988, are not subject to the requirements of the ADA. Whatever the merits of that argument, it cannot be resolved on a motion to dismiss.

2

against defendants for violation of the ADA, and seeks injunctive relief in the form of a court order directing defendants to make the Coastal Excursion Train comply with the ADA. The complaint further seeks reasonable attorney's fees and costs incurred in the bringing of this litigation.

Defendants have moved to dismiss the complaint for lack of standing under Fed. R. Civ. P. 12(b)(1), failure to join a necessary party under Fed. R. Civ. P. 12(b)(7), and failure to state a claim under Fed. R. Civ. P. 12(b)(6). Defendants have also moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Plaintiff has moved to strike various exhibits defendants attached to their motion to dismiss.

## II. Motion to Strike

Because the disposition of the motion to strike will affect the record, the Court will address it first.

Defendants attached ten exhibits to their motion to dismiss: (1) an excerpt from the book *A History of Commonwealth Engineering*; (2) an article from the New York Times dated September 21, 1988, titled *L.I.R.R. May Add Double-Decker Coaches*; (3) a certificate of use and occupancy for the Hyannis Station Platform issued by the Massachusetts Department of Public Safety; (4) corporate registration information for Cape Cod Central Railroad, Inc.; (5) corporate registration information for Cape Rail, Inc.; (6) copies of tickets issued to a Joann Miller; (7) corporate registration information for Iowa Pacific Holdings, LLC; (8) what appears to be a draft pamphlet from the Massachusetts Department of Transportation titled "Massachusetts State Rail Plan"; (9) corporate registration information for McEvoy Commercial Associates, LLC; and (10) a Westlaw printout of Section 3:7 of a Massachusetts practice guide to landlord and tenant law.

At the motion to dismiss stage, "any consideration of documents not attached to the

complaint, or not expressly incorporated therein, is forbidden." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). There are certain narrow exceptions to that rule, including "documents the authenticity of which are not disputed by the parties," "official public records," "documents central to plaintiffs' claim," and "documents sufficiently referred to in the complaint." *Id.* Many of the exhibits do not fall into any of these categories. However, some of the exhibits (specifically, the corporate registration information) are verifiable official public records locatable on the websites of the Secretaries of States of Massachusetts and Iowa. Accordingly, the motion to strike will be granted as to Exhibits 1, 2, 3, 6, 8, and 10, and denied as to Exhibits 4, 5, 7, and 9.

### III. Motion to Dismiss

#### A. Lack of Standing

Defendants contend that this court lacks subject-matter jurisdiction because plaintiff does not have legal standing. On a motion to dismiss made pursuant to Rule 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (quoting *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993) (internal quotation marks omitted)). A court "must credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).

To establish standing, a plaintiff must show an injury in fact, causation, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). It is well established that "[a] disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA and who is threatened with harm in the future because of existing or imminently threatened noncompliance with the ADA

4

suffers actual or imminent harm sufficient to confer standing." *Disabled Am. for Equal Access, Inc. v. Ferries del Caribe, Inc.*, 405 F.3d 60, 64 (1st Cir. 2005) (internal quotation marks and citation omitted). Here, the complaint clearly pleads sufficient facts to establish an injury: plaintiff alleges that he is disabled, that he was denied access to defendants' rail cars, and that he intends to return to the premises again.

In their motion, defendants raise a variety of arguments. First, they contend that plaintiff never suffered an "injury in fact" because he was never able to board the train. (Def. Mem. at 12). But that has it backwards; the fact that plaintiff allegedly was unable to access the train because of his disability constitutes the required "injury in fact." *See Disabled Am. for Equal Access, Inc.*, 405 F.3d at 64-65.

Second, defendants contend that the complaint fails to "state specifically whether he actually encountered the alleged barrier(s) during his single visit" to the train. (*Id.* at 13). They reason that the complaint fails to state an injury because it does not adequately describe the specific barriers that plaintiff encountered. (*Id.*) However, paragraph 16 explicitly alleges that the train included ten barriers to access, including lack of ramps and inaccessible means of egress. (Compl. ¶ 16). That is a sufficiently specific allegation for present purposes.

Third, defendants attack plaintiff's request that he be permitted to conduct an "inspection of the [train facility]" to determine whether there are further ADA violations. (*Id.* ¶ 17). They rely on *Norkunas v. Seahorse NB, LLC*, 444 F. App'x 412 (11th Cir. 2011) (unreported), in which the Eleventh Circuit held that the plaintiff lacked standing to bring certain claims under the ADA. That court also held that the ADA does not permit a plaintiff to assert claims against "an entire facility . . . once one barrier is encountered." *Id.* at 416.[2] However, at least two other

---

[2] The Eleventh Circuit's Local Rules state that unpublished opinions like *Norkunas* are "not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

5

federal appellate courts have held that a plaintiff need not "have personally encountered all the barriers that bar his access . . . in order to [have standing to] seek an injunction to remove those barriers," as long as he has encountered at least one such restriction. *See Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002) (reasoning that such a requirement would narrowly construe the ADA and be inefficient and impractical); *Steger v. Franco, Inc.*, 228 F.3d 889, 893-95 (8th Cir. 2000) (same). While the First Circuit has not addressed the precise issue at hand, it has suggested that it would agree with the reasoning of the Eighth and Ninth Circuits. *See Dudley v. Hannaford Bros. Co.*, 333 F.3d 299, 305 (1st Cir. 2003) ("The proposition that . . . a disabled person must subject himself to repeated instances of discrimination in order to invoke the remedial framework of Title III . . . turns the language of [the ADA] on its head."). Therefore, the claim will not be dismissed on that basis.

Fourth, defendants contend that plaintiff is "unlikely to return to the [train] and therefore does not have a substantial likelihood of future injury." (Def. Mem. at 15). They reason that because the station is approximately 11 miles away from his home, he "would not regularly visit" the train. (*Id.* at 16). They further argue that he "cannot establish a likelihood of future injury . . . because [he] never visited in the past." (*Id.*). However, an allegation that a disabled plaintiff was subject to discrimination at a facility, and intends to return to the facility to avail himself of the offered services, suffices to establish standing. *See Disabled Am. for Equal Access, Inc.*, 405 F.3d at 64-65; *see also Marradi v. Karoska Landing, Inc.*, 323 F. Supp. 3d 216, 218-19 (D. Mass. 2018) (Zobel, J.); *Marradi v. K&W Realty Inv. LLC*, 212 F. Supp. 3d 239, 244 (D. Mass. 2016) (Gorton, J.); *Marradi v. K&W Realty Inv. LLC*, 2016 WL 5024198, at *2 (D. Mass. Sep. 15, 2016) (Sorokin, J.).

Accordingly, defendants' motion to dismiss for lack of standing will be denied.[3]

B.  **Failure to Join a Necessary Party**

Defendants have also moved to dismiss the complaint for failure to join a necessary party. Whether joinder of a party is required is governed by Fed. R. Civ. P. 19. As the First Circuit has explained:

> Rule 19 is designed to protect the interests of parties who are not yet involved in ongoing litigation. To measure how critical those interests are, the rule instructs courts to engage in a two-part analysis. Parties should be joined, when feasible, if they are "necessary" to the action according to the criteria laid out in Rule 19(a). If a necessary party cannot be joined in the action without divesting the court of subject-matter jurisdiction, Rule 19(b) lays out additional criteria for determining whether that party is "indispensable." If the court finds that party is anything less than indispensable, the case proceeds without her. If, on the other hand, the court finds that the litigation cannot proceed in the party's absence, the court must dismiss the case.

*Jimenez v. Rodriguez-Pagan*, 597 F.3d 18, 25 (1st Cir. 2010) (internal citations and footnote omitted). The court continued:

> The term 'necessary' is a vestige of a superseded version of Rule 19 and no longer appears in the text. . . . Lest there be any confusion, the word is used as a term of art and signifies desirability rather than actual necessity. Parties are not truly necessary in the vernacular sense of the word unless and until they satisfy the terms of Rule 19(b).

*Id.* at 25 n.3.

Here, defendants contend that the complaint must be dismissed because plaintiff failed to file suit against Iowa Pacific Holdings, LLC. In support, they rely on certain exhibits attached to

---

[3] Defendants contend that that "[p]laintiff's claims must be dismissed to the extent that they are based upon or attempt to rely upon technical, abstract violations of the regulations promulgated by the United States Attorney General or [state or federal Departments of Transportation] for the purpose of implementing the ADA." (Def. Mem. at 18). It is uncertain what defendants are referring to, as the complaint refers exclusively to the ADA and its implementing regulations.

Defendants also contend that plaintiff did not actually purchase the train tickets in question. (Def. Mem. at 15). Whatever the merits of that argument, at a minimum, it relies on evidence that cannot be considered in addressing the motion to dismiss.

7

their motion, which purportedly show that Iowa Pacific is the owner of the rail cars in question. Courts are "not limited to the pleadings" in considering a motion to dismiss under Rule 12(b)(7) and may rely on certain "relevant extra-pleading evidence." *See Axis Ins. Co. v. Hall*, 287 F.R.D. 110, 113 (D. Me. 2012). However, even assuming that Iowa Pacific is an "indispensable" party, defendants' argument fails because joinder would not divest this court of subject-matter jurisdiction.[4] The proper remedy is simply for defendants to file a motion for joinder. Indeed, defendants suggested they would file such a motion in their memorandum, but ultimately decided not to. (*See* Def. Mem. at 19; Pl. Ex. 3).

Defendants also suggest that joinder of the Massachusetts Department of Transportation and an entity called McEvoy Commercial Associates, LLC, is required. Defendants contend that the Department of Transportation is "an owner" of the platforms used to board the rail cars and that McEvoy is the owner of the real property at the station. (Def. Mem. at 19). However, plaintiff has not alleged that features within the control of those entities violate the ADA. (Pl. Opp. at 17).[5] Accordingly, the motion to dismiss for failure to join a necessary party will be denied.

C.     **Failure to State a Claim**

On a motion to dismiss pursuant to Rule 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In

---

[4] The basis for subject-matter jurisdiction in this suit is a federal question, not diversity.
[5] The complaint alleges only that the rail cars themselves violate the ADA.

8

other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss." *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008). It differs from a Rule 12(b)(6) motion primarily because it is filed after the close of pleadings and "implicates the pleadings as a whole." *Aponte–Torres v. Univ. of P.R.*, 445 F.3d 50, 54-55 (1st Cir. 2006). Because the legal standards for Rule 12(b)(6) and Rule 12(c) motions are substantively the same, the Court will address them in tandem.

Although it is not entirely clear from their memorandum, defendants appear to suggest that the complaint does not state a *prima facie* case for an ADA violation. To make a *prima facie* claim, a plaintiff must show that he is (1) disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA. *Marradi*, 212 F. Supp. 3d at 245. The ADA defines discrimination by a defendant public accommodation as including "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable," 42 U.S.C. § 12182(b)(2)(A)(iv), and further defines "readily

achievable" as "easily accomplishable and able to be carried out without much difficulty or expense," *id.* § 12181(9).

It is undisputed that plaintiff is "disabled" within the meaning of the ADA. Moreover, because the complaint alleges that the alleged ADA violations may be remedied "without much difficulty or expense," (Compl. ¶ 18), the third element has also been satisfied. *See Marradi*, 212 F. Supp. 3d at 245-46. Defendants, however, contend that the complaint fails to establish the second element.

First, defendants contend that Podgurski, the president of both Cape Cod Central Railroad and Cape Rail, may not be sued in his individual capacity. (Def. Mem. at 6-7). They note that individuals may not be sued under Title II of the ADA, which prohibits discrimination by *public entities*. *See Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000). Relying on *Coddington v. Adelphi Univ.*, 45 F. Supp. 2d 211 (E.D.N.Y. 1999), they seek to extend this reasoning to Title III (under which this suit was brought), which prohibits discrimination by *private entities*. In *Coddington*, the court held that university leaders and administrators could not be individually liable under Title III merely because they "were responsible for making decisions regarding disabled students and plaintiff in particular." *Id.* at 217.

However, as another judge in this district has explained, "[n]early every court that has decided the issue of individual liability under Title III has found that individuals can be held responsible for violations of these prohibitions against discrimination" if they own, lease, or operate a place of public accommodation. *Guckenberger v. Bos. Univ.*, 957 F. Supp. 306, 322 (D. Mass. 1997). Whether an individual "operates" a place of public accommodation within the meaning of Title III depends on whether he or she is in a position of authority, has the power and discretion to perform potentially discriminatory acts, and the discriminatory acts are the result of

the exercise of the individual's own discretion. *See id.* at 322-23 (citing *Howe v. Hull*, 874 F. Supp. 779, 787-88 (N.D. Ohio 1994)). Here, Podgurski is alleged to be the president and a director of the two corporate defendants, and therefore it is plausible that he had the requisite decision-making authority. Moreover, in their automatic disclosures, defendants themselves represented that Podgurski "is one of the owners of the defendant railroads" and "has been and is involved in all aspects of the business and operations of the defendant railroads." (Pl. Ex. 2). Under the circumstances, the Court concludes that the complaint has alleged facts sufficient to support a Title III claim against Podgurski.[6]

Second, defendants contend that Cape Rail is "merely a holding company" and thus does not constitute an owner, lessor, or operator of the train lines in question. (Def. Mem. at 10). However, they concede that Cape Rail "holds stock of [Cape Cod Central Railroad]." (*Id.*). Whether Cape Rail exercised the requisite degree of ownership or control is a factual issue not suitable for resolution on a motion to dismiss.

Defendants also separately contend that the complaint "fail[ed] to specify which set of ADA technical standards it is applying." (Def. Mem. at 5). Defendants state that "[a]ny alterations to the [trains] performed before March 15, 2012, would have been governed by the 1991 ADA Standards, and those performed after [that] date would have been subject to the 2010 ADA Standards." (*Id.* at 6). Again, however, the allegations of unlawful barriers make out a plausible violation of the ADA and its implementing regulations, and the underlying facts, and applicability of specific regulations, must await a more developed factual record.

## IV. Conclusion

For the foregoing reasons, plaintiff's motion to strike is GRANTED in part and DENIED

---

[6] The Court need not address defendants' argument that plaintiff must "pierce the corporate veil" in order to subject Podgurski to individual liability.

11

in part.  Defendants' motion to dismiss and motion for judgment on the pleadings are DENIED.

**So Ordered.**

Dated:  August 14, 2019

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge